J. MICHAEL KALER, SBN 158296
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
Email: michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
Email: mak@kramerlawip.com

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, | ) Case No. 08 CV 306 BTM CAB ) ) |
| Plaintiff, | ) **OPPOSITION TO DEFENDANT'S** ) **MOTION TO STAY PENDING** ) **OUTCOME OF REEXAMINATION** ) **PROCEEDINGS** |
| v. | ) |
| SUNBEAM PRODUCTS, INC., a Delaware corporation; and DOES 1 – 100, | ) Date: May 30, 2008 ) Time: 11:00 a.m. ) Courtroom 15 – 5th Floor ) The Hon. Barry T. Moskowitz |
| Defendants. | ) |
| and related counterclaims. | ) *NO ORAL ARGUMENT* ) *UNLESS REQUESTED BY THE COURT* ) ) ) ) ) ) ) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

SUMMARY OF OPPOSITION ........................................................................... 1

FACTUAL SUMMARY ....................................................................................... 2

    *Procedural Posture*............................................................................................ 2
    *Status of '184 patent reexaminations* ............................................................ 2

ARGUMENT ......................................................................................................... 3

I.    DEFENDANT'S REQUEST FOR STAY SHOULD BE DENIED AS THE
    FACTS ARE DISTINGUISHABLE FROM THE *BLACK & DECKER* CASE..... 3

II.    PLAINTIFF WOULD BE UNDULY PREJUDICED AND
T    ACTICALLY DISADVANTAGED BY A STAY ....................................... 4

    A.    *Ex Parte* Reexaminations Can Be Expected to Extend for Five
        Years or More, Rather than 18-23 Months ........................................... 4

        *1.*    *A closer look at USPTO data shows the current length
            of reexamination proceedings to be far longer than
            23 months*................................................................................ 4*

        *2.*    *Five-plus year reexaminations undermine congressional
            intent for use of the reexamination process.* ............................ 6

        *3.*    *Lengthy reexamination proceedings also undermine the
            intent of the Local Patent Rules.*................................................ 7

        *4.*    *Caselaw supporting liberal grants of litigation stays pending the
            completion of reexamination proceedings are inapposite.* ............... 8

    B.    Plaintiff Would Be Prejudiced Through The Inability To Identify
        and Serve All Proper Defendants....................................................... 11

    C.    Plaintiff Would Be Prejudiced Through The Loss Of Evidence. ...... 11

III.    DEFENDANT IS JUDICIALLY ESTOPED FROM CLAIMING

i.

HARDSHIP BY SEEKING DECLARATORY RELIEF. ...........................13

CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461 (1937) ....................... 14

*American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224 (9th Cir. 1988) ............... 14

*ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378
(N.D. Cal. 1994).  ................................................................................................ 9

*Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155
(E.D. Texas, 2008) ................................................................................................ 11

*Danis v. USN Communs, Inc.,* 2000 U.S. Dist. LEXIS 16900 at *4-5 .................... 12

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL
1655625 (N.D. Cal. 2007) .................................................................................... 3

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953
(Fed.Cir.1987)        ................................................................................................ 13

*Gould v. Control Laser Corporation,* 705 F.2d at 1342, 217 USPQ at 986 ............. 9

*Hughes v. Vanderbilt University* 215 F.3d 543, 549 (6th Cir., 2000) ...................... 14

*In re Fordson Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). ...... 14

*Jain v. Trimas Corp.,* 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005) ............. 3

*MedImmune, Inc. v. Genentech, Inc.,* U.S., 127 S.Ct. 764 (2007)               13

*Madden v. Wyeth,* 2003 U.S. Dist. LEXIS 6427. ................................................... 13

*Medichem, S.A. v. Rolabo, S.L.,* 353 F.3d 928, 936 (Fed.Cir.2003) ....................... 10

*MercExchange, L.L.C. v. eBay, Inc.,* 500 F.Supp.2d 556 83 U.S.P.Q.2d 1688
(E.D.Va. Jul 27, 2007). ......................................................................................... 11

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, (E.D.Va.2005). ........ 10

*Patlex Corp. v. Mossinghoff,* 758 F.2d 594 (Fed.Cir.1985) .................................... 10

*Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986) .................................. 14

Case No. 08CV306BTM CAB

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.* 497 F.3d 1271 (Fed.Cir. 2007) ............................................................................................ 13

*Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d 481 (7th Cir. 1997) ......... 14

*Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660 (E.D.Tex.2005) ........................................................................................... 3

*Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107 (N.D.Cal. 2006). ........... 13

*Treppel v. Biovail Corp.,* 233 F.R.D. 363 (2006)................................................. 12

*Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001). ............. 3

*White v. Arco/Polymers, Inc.,* 720 F.2d 1391 (5th Cir.1983)                          14

Statutes

28 U.S.C § 2201    ........................................................................................ 13

35 U.S.C. § 305    .......................................................................................... 6

Rules

Fed.R. Civ.P, Rule 15(c)................................................................................. 12

Secondary Sources

H.R. REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463.                  .................................................................................... 6

# SUMMARY OF OPPOSITION

The Court should deny Defendant's Motion for Stay on the grounds of a pending patent reexamination because (1) such a stay would most likely extend five years or more, creating a substantial likelihood of prejudice to Plaintiff; (2) the delay would prevent identification of any other proper defendants, who might then escape liability due to the passage of time; and (3) Defendant's counterclaim for declaratory judgment creates estoppel against Defendant's request for delay.

Defendant SUNBEAM PRODUCTS, INC. 's, ("Defendant") Motion for Stay (Docket # 22) is largely duplicative of the motions for stay in several related cases[1], and Plaintiff's general arguments against the propriety of a stay in those cases is applicable here and thus incorporated by reference[2]. However, this Opposition contains data and details first described in case no. 07-CV-02321 (the "Energizer case") that entirely change the landscape of the issue of stay requests on the '184 patent cases.

Since the filing of the first few related oppositions to motions for stay, Plaintiff has learned that the approximate duration of patent reexaminations has dramatically increased in recent years from an average of 18-23 months as cited in prior arguments to the Court, to a duration likely to be closer to five years than to two years

Because of this new data, a litigation stay pending reexamination completely undermines the entire original purpose of the reexamination process – to allow a prompt forum for review of the validity of a patent. It also undermines the intent and purpose of the Local Patent Rules for streamlined patent litigation.

---

[1] *Sorensen v. Black & Decker Corporation, et al*, Case No. 06-cv-1572, *Sorensen v. Giant International, et al*, Case No. 07-cv-02121, and *Sorensen v. Helen of Troy, et al*, Case No. 07-cv-02278

[2] See *Request for Judicial Notice* for docket numbers.

The required balancing of the parties' interests weighs in favor of only a partial stay of proceedings, if that. The partial stay should allow initial discovery and motion practice to continue.

## FACTUAL SUMMARY

*Procedural Posture*. On March 24, 2008, Defendant filed the pending Motion for Stay.

Recent other filings of '184 patent infringement cases bring the total number of cases pending before this Court to 24.

*Status of '184 Patent Reexaminations*. Patent infringement defendant Black & Decker filed an Ex Parte Request for Reexamination of the subject '184 patent in July 2007 ("1st reexamination") and, on that basis, obtained an order staying the related case, *Sorensen v. Black & Decker Corporation, et al,* Case No. 06cv1572 ("Black & Decker Order"). Now, nine months later, no first office action for the 1st reexamination has yet issued, even though Plaintiff declined to file the optional patent owner's statement, thereby denying Black & Decker the ability to file more documents with the USPTO, in order to shave approximately two months from the process. *Kramer Decl.* ¶ 4.

Co-defendants in the Black & Decker case - Phillips Plastics and Hi-Tech Plastics – waited until December 21, 2007 to file a second third-party reexamination request ("2nd reexamination"), which the USPTO has just recently accepted. *Kramer Decl.* ¶ 5.

Closer analysis of USPTO data show that the current, average timeframe for conclusion of a reexamination is approximately five years, extending longer if an appeal to the Federal Circuit is sought. *Kramer Decl.* ¶ 6.

Case No. 08CV306BTM CAB

# ARGUMENT

"A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze.   [cites omitted]" *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007).

"There is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation."  *Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005), quoted in *Fresenius, supra.*

Defendants are trying to derail this litigation by essentially arguing *per se* entitlement to a stay based upon the *Black & Decker* stay.  That argument fails because updated information regarding the average duration of reexaminations challenges the assumptions under which that stay was issued and warrant a closer examination by the Court.

I.    DEFENDANT'S REQUEST FOR STAY SHOULD BE DENIED AS THE FACTS ARE DISTINGUISHABLE FROM THE *BLACK & DECKER* CASE.

The court is not required to stay judicial resolution of a patent case in view of reexaminations, rather the decision to stay is within the discretion of the Court. *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

A court must weigh the parties competing interests <u>as presented by the specific facts of the case at bar</u>.  *Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005) (emphasis added).

This motion is materially different from the <u>Black & Decker</u> situation upon request for stay in at least two respects: (1) the Court now has more accurate information regarding the expected duration of reexamination proceedings; and (2) there was no extensive delay between initial contact by the Plaintiff and filing of this suit.

Issuance of a stay that will likely extend approximately five years, longer than the time that the parties have even been in communication, is excessive.

## II.    PLAINTIFF WOULD BE UNDULY PREJUDICED AND TACTICALLY DISADVANTAGED BY A STAY.

A new analysis based on USPTO statistical data shows that the likely duration of an *ex parte* reexamination proceeding is closer to five years, not two. Such a lengthy stay undermines the congressional intent for implementation of the reexamination process, and also undermines the Local Patent Rules. Furthermore, this extensive delay would prejudice the Plaintiff through inability to identify and serve all appropriate defendants and inability to locate and preserve necessary evidence and record witness testimony.

Thus, Plaintiff would be unduly prejudiced and subjected to a clear tactical disadvantage by a complete stay of this case pending completion of two *ex parte* reexamination proceedings before the USPTO.

### A.    *Ex Parte* Reexaminations Can Be Expected to Extend for Five Years or More, Rather than 18-23 Months.

Defendant's Motion for Stay relies on this Court's order to stay the related '184 patent infringement case against Black & Decker. The Black & Decker Order was based on statistical data from the USPTO's office that has since been shown to be obsolete, in that it reflects an average of all reexamination activity since 1981, and ignores the huge increase in reexamination backlog that has occurred over the past six years.

#### 1.    *A closer look at USPTO data shows the current length of reexamination proceedings to be far longer than 23 months.*

In the Black & Decker motion for stay, the moving parties pointed to a June 2006 statistical report from the USPTO that listed average pendency of

reexaminations to be 22.8 months, and median pendency to be 17.6 months[3] ("2006 Report"). This was a material factor in the Court's decision to stay that case.[4] However, closer examination of the USPTO's raw data shows a remarkably different picture of the duration of reexaminations than the 2006 Report suggests.

The 2006 Report is based upon averages over the entire 28-year course of the existence of reexamination proceedings, since 1981. What the 2006 Report does not show is the dramatic increase in filings relative to the number of certificates issued (which signal the end of the reexamination proceeding) over the past few years.

USPTO Annual Reports contain statistics on the number of ex parte reexamination filings, the number of those that are known to be related to litigation, the number of ex parte reexaminations granted, and the total number of certificates issued. The official website contains annual reports back to 1993 which contain this statistical data back to 1989. *Kramer Decl.* ¶ 7, Exhibit A.

By comparing the incoming reexamination filings vs. the outgoing certificates, a pattern of dramatically increasing backlog appears. Assuming a zero carryover from 1988 into the 1989 figures for which records are available, the backload of ex parte reexaminations has increased more than 100-fold from 1989 to the end of 2007 (from 16 to an estimated 1,658). *Kramer Decl.* ¶ 8, Exhibit B.

If the PTO were able to keep issuing certificates at the rate of the highest number of reexamination certificates ever issued in a single year, 367, and have zero new filings, it would still take approximately 4.5 years for the PTO to erase the backlog of *ex parte* reexaminations. *Kramer Decl.* ¶ 9. If the rate of certificate

---

[3] See *Judicial Notice*, Docket #180, Exhibit B, from *Black & Decker* case.

[4] See *Judicial Notice*, Docket #243, page 7:19-22, in the *Black & Decker* case: "An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present action. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)"

1    issuances were at the average for the past five years (250), it would take 6.6 years to

2    erase that same backlog. *Kramer Decl.* ¶ 10.

3        The impact of this newly analyzed USPTO data extends beyond the realization

4    that reexaminations are extending for longer and longer periods of time.  Five-plus

5    year long reexaminations (1) undermine the legislative policy underlying creation of

6    the reexamination process in the first place; and (2) undermine this District's efforts

7    to streamline and expedite intellectual property cases through newly implemented

8    Local Patent Rules; and (3) render older case law on the subject of litigation stays

9    pending reexamination inapplicable.

10                2.    *Five-plus year reexaminations undermine congressional intent*

11                      *for use of the reexamination process.*

12        The express congressional intention was that reexamination should "provide a

13    useful and necessary alternative for challengers and patent owners to test the validity

14    of United States patents in an efficient and relatively inexpensive manner." H.R.

15    REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463.

16        All reexamination proceedings under this section, including any appeal to the

17    Board of Patent Appeals and Interferences, are to be conducted with "special

18    dispatch." 35 U.S.C. § 305.

19        As demonstrated above, efficiency and "special dispatch" have not proven to

20    be the case in recent years.  To the contrary, the filing of reexaminations has become

21    an effective weapon to slow down or stop patent infringement plaintiffs.  This is not

22    only demonstrated by numerous articles recommending this strategy to infringement

23    defendants,[5] but it is also demonstrated by the USPTO's own information. *Kramer*

24    *Decl.* ¶ 11.

25        The USPTO was already commenting on problems keeping pace with these

26    increased litigation related filings in 2004, even though the estimated backlog was

27    _____

28        [5] See *Kramer Decl.* Exhibit D.

Case No. 08CV306BTM CAB

still less than 800 at the end of 2003.  *Kramer Decl.* ¶ 12. In fact, the frequent use of multiple reexamination requests by litigants to further delay of the litigation fueled a PTO rule change in 2004 changing the standard of review for second or subsequent reexamination requests.

These statistics are not a disparagement of the PTO's efforts.   It is a recognition that the recent increase in reexamination filings have overwhelmed the staffing and capabilities of the PTO.  The increase has made the statutory mandate of "special dispatch" a meaningless phrase.

*Ex parte* reexamination requests known to be related to litigation have soared from a mere 9% in 1990 to 57% for 2007.  In fact, the frequent use of multiple reexamination requests fueled a USPTO rule change in 2004 changing the standard of review for second or subsequent reexamination requests.

The "Notice of Changes in Requirement" document (see *Kramer Decl.* ¶ 13, Exhibit C) made the following statement in the Background section:

> It has been the Office's experience, however, that both patent owners and third party requesters have used a second or subsequent reexamination request . . . to prolong the reexamination proceeding, and in some instances, to turn it essentially into an *inter partes* proceeding. These actions by patent owners and third party requesters have resulted in multiple reexaminations taking years to conclude, thus making it extremely difficult for the Office to conclude reexamination proceedings with "special dispatch" as required by statute (35 U.S.C. 305 for *ex parte* reexamination, 35 U.S.C. 314 *inter partes* reexamination).

Even though the USPTO was having problems completing reexaminations with "special dispatch" in 2004, the sheer volume of increased filings since then demonstrate an even larger problem now.  This turns what was intended to be an efficient, timely process into an almost guaranteed strategy for delay in patent litigation.

3.    *Lengthy reexamination proceedings also undermine the intent of the Local Patent Rules.*

In 2006, this Court adopted and implemented a set of Patent Local Rules with the stated purpose of providing a predictable and uniform treatment for IP litigants and streamline the process by which a patent case is litigated, shortening the time to trial or settlement and thereby reducing costs for all parties involved.  The new rules set up a schedule where a claim construction hearing would be held approximately nine months after the complaint is filed, and trials set at approximately 18 months after complaints are filed.  *Kramer Decl.* ¶ 14.

Judge Dana M. Sabraw, who chaired the committee that established the new patent local rules, said: "A majority of the judges of the Southern District are firmly committed to holding claim construction hearings within nine months for the filing of the complaint, and to setting a trial date within 18 months of that filing." *Kramer Decl.* ¶ 15, Exhibit D.

None of these purposes and intents can be met when an infringement defendant can file an *ex parte* reexamination request and receive an almost automatic multi-year exception from the timeline set out in the Local Rules.

While district judges are working to streamline and expedite patent cases, the USPTO's statutorily-required "special dispatch" procedure has been getting slower and slower.

The net effect in this case and the related '184 infringement cases is that two carefully timed *ex parte* reexamination have been relied upon to deny Plaintiff the ability to enforce its valid patent.

4.    *Caselaw supporting liberal grants of litigation stays pending the completion of reexamination proceedings are inapposite.*

It is no surprise that so many *ex parte* reexamination requests are flooding the USPTO.  These filings have become an oft-used weapon by patent infringement

1    defendants because litigation stays are routinely granted pending conclusion of

2    reexamination.  In 1990, the percentage of *ex parte* filings that were known to be

3    related to litigation was a mere nine percent (9%).  By 2007, after a host of

4    publications had pushed reexamination as a litigation strategy for defendants, the

5    percentage had increased more than six-fold to 57%.

6        The *Black & Decker* Order was based on legal opinions that either predated

7    the recent dramatic increase in filings and consequent backlog of cases, or opinions

8    that relied on that same outdated factual scenario.

9        The issue in the *Ethicon* case was whether the PTO could stay a reexamination

10   pending completion of a court case, not the other way around.  The *Ethicon* court did

11   cite *Gould v. Control Laser Corporation*, 705 F.2d at 1342, 217 USPQ at 986, for

12   the proposition that the court had authority to order a stay pending conclusion of a

13   PTO reexamination.  What the *Gould* decision actually said was that "power already

14   resides with the Court to prevent costly pretrial maneuvering which attempts to

15   *circumvent* the reexamination procedure." (emphasis in original).  Plaintiff has done

16   nothing here or in related cases trying to circumvent the reexamination procedure.

17       The "'liberal policy' in favor of granting motions to stay pending the outcome

18   of PTO reexamination proceedings" (Docket #243, page 5:19-21) came from the

19   1994 case of *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1381

20   (N.D. Cal. 1994).  A close look at that decision reveals a statement by the court that

21   "it is clear from the cases cited by the parties that there is a liberal policy of granting

22   stays pending reexamination," but does not directly cite to any particular case.

23   Furthermore, even if the Court had evaluated the approximately length of

24   reexamination proceedings in 1994 (there is no indication that it did), it would have

25   shown that the USPTO was effectively handling its caseload, issuing almost as many

26   certificates in a year as new requests that were being accepted.  A liberal policy of

27   granting motions to stay pending the outcome of reexamination proceedings was

28   fully appropriate in 1994.  That is no longer the case.

*Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D.Cal. May 24, 2006), also relies on the misconstrued *Gould* case, and the outdated *ASCII* case, as did the other cases.

None of the cases cited in the *Black & Decker* order appear to give any consideration whatsoever to the relative length of time that the reexamination will take.  In more recent cases, however, Courts are beginning to acknowledge the extended duration of reexamination proceedings and are exercising their inherent authority to not stay proceedings pending reexaminations that can take years to complete.

> A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. *See id.* ("The [district] court is not required to stay judicial resolution in view of the [PTO] reexaminations."); *see also Medichem, S.A. v. Rolabo, S.L.,* 353 F.3d 928, 936 (Fed.Cir.2003) ("[O]n remand, a stay of proceedings in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion.") (stated in the context of reissue proceedings for interfering patents before the Board of Patent Appeals and Interferences); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 602-03 (Fed.Cir.1985) (recognizing judicial discretion in stay determinations for patent proceedings).

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005). (2005).

The *NTP* court was adamant that it was not going to stay litigation based upon the moving party's unfounded speculation that the patent would soon be invalidated.

> The likely duration and result of the PTO's reexamination proceedings and any subsequent (and likely) appeals are in dispute. RIM, turning a blind eye to the many steps that must still be taken before a final determination can be issued by the PTO and confirmed, suggests that the patents-in-suit will be invalidated in a matter of *months*. NTP, on the other hand, insists on the likelihood of the opposite result and gives a reality-based estimated time frame of *years*. Regardless of which party's predictions this Court might adopt, any attempt at suggesting a likely time frame and outcome of the PTO reexamination process is merely

speculation. This Court cannot and will not grant RIM the extraordinary remedy of delaying these proceedings any further than they already have been based on conjecture.

*Id.*

Further, the case of *Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas, 2008), recently proceeded to plaintiff's verdict despite e*x parte* and *inter partes* reexaminations that had been ordered 13 months previous in which no office actions had been issued.

Other cases have reaffirmed that district courts are not obligated to issue stays, including *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 562, 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007).

Because the re-analyzed USPTO data show that the 1st reexamination on the '184 patent is likely to not be complete for approximately 5 years from its filing, and because the 2nd reexamination has the potential to introduce even further delay in the completion of reexamination proceedings, a stay pending reexamination by the USPTO should not be granted.

B.    Plaintiff Would Be Prejudiced Through The Inability To Identify and Serve All Proper Defendants.

As detailed more fully in the previously filed related oppositions to motions for stay, Fed.R. Civ.P, Rule 15(c), places limitations on a party's ability to amend pleadings to add or substitute parties, and places restrictions on when such amendments relate back to the date of the initial filings.  Inability to identify responsible parties inhibits the ability to give those parties notice of the case, thereby increasing the chance that they will claim prejudice later, and increasing the likelihood that other parties will destroy or dispose of critical evidence.

A complete stay of litigation before any preliminary steps are taken to identify proper parties and ensure initial discovery or preservation of evidence greatly prejudices the Plaintiff and may well prejudice the entire judicial process in this case.

11.

C.    <u>Plaintiff Would Be Prejudiced Through The Loss Of Evidence.</u>

The Federal Rules of Civil Procedure do not expressly impose a duty to preserve evidence. Courts have construed the federal discovery rules, particularly Rule 26, to imply a duty to preserve all evidence that may be relevant in a case. *See Danis v. USN Communs, Inc.*, 2000 U.S. Dist. LEXIS 16900 at \*4-5.

> The obligation to preserve arises when the party has notice that the evidence is relevant to litigation -- most commonly when the suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.

*Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371 (2006).

If a complete stay is issued, there is no assurance that parties (whether parties to the suit or otherwise) will have knowledge of any obligation to preserve evidence, and in the case of third-party suppliers would actually have a disincentive to preserve evidence.

A preservation order protects the producing party by clearly defining the extent of its preservation obligations. *Id*. at 370. "In the absence of such an order, that party runs the risk of future sanctions if discoverable information is lost because [the party] has miscalculated." *Id*. Further, "[preservation] orders are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication." *Id*. at 370.   Because the duty of preservation exists without a court order, some courts are reluctant to grant motions to preserve evidence. *See Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427.

Plaintiff needs to have an opportunity to conduct at least preliminary discovery and request a detailed preservation order, otherwise it will be subjected to substantial prejudice as a result of a stay.

1   Motions to stay pending patent reexamination have been denied where the

2   likely length of reexamination will serve to exacerbate the risk of lost evidence.  In

3   *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006).  That

4   is very much the situation here.

5

6   III.    DEFENDANT IS JUDICIALLY ESTOPPED FROM SEEKING A STAY IN
        LIGHT OF ITS COUNTERCLAIM FOR DECLARATORY RELIEF.

7

8   Defendant has asserted in its Rule 11-governed responsive pleading a

9   counterclaim under the Declaratory Judgment at 28 USC §§ 2201 *et seq.*  "[T]he

10  purpose of the Declaratory Judgment Act in patent cases is to provide the allegedly

11  infringing party <u>relief from</u> uncertainty and <u>delay</u> regarding its legal rights." *Sony*

12  *Electronics, Inc. v. Guardian Media Technologies, Ltd.* 497 F.3d 1271 (Fed.Cir.

13  2007) quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 956

14  (Fed.Cir.1987) (emphasis added).

15  Further, the *Sony* Court noted that the U.S. Supreme Court had stated in its

16  decision in *MedImmune, Inc. v. Genentech, Inc.,* --- U.S. ----, 127 S.Ct. 764, 771 166

17  L.Ed.2d 604 (2007) that the test of a declaratory judgment claim for relief is whether

18  "there is a substantial controversy, between parties having adverse legal interests, of

19  <u>sufficient immediacy</u> and reality to warrant the issuance of a declaratory judgment."

20  *quoting Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-1, 57 S.Ct. 461, 81 L.Ed.

21  617 (1937) (emphasis added).

22  The allegations in Defendant's counterclaim, rely upon the Declaratory

23  Judgment Act, and thus are judicial admissions that Defendant claims that its legal

24  rights are of "sufficient immediacy" that it needs "relief from . . . delay regarding its

25  legal rights."

26  Parties "are bound by admissions in their pleadings, and a party cannot create

27  a factual issue by subsequently filing a conflicting affidavit." *Hughes v. Vanderbilt*

28

1    *University* 215 F.3d 543, 549 (6th Cir., 2000) *citing  Reid v. Sears, Roebuck & Co.,*

2    790 F.2d 453, 460 (6th Cir.1986).

3        The Court in *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th,

4    Cir. 1988) stated: "Factual assertions in pleadings and pretrial orders, unless

5    amended, are considered judicial admissions conclusively binding on party who

6    made them."  The *American Title* Court further observed that:  "Judicial admissions

7    are formal admissions in the pleadings which have the effect of withdrawing a fact

8    from issue and dispensing wholly with the need for proof of the fact."  *In re Fordson*

9    *Engineering Corp.,* 25 B.R. 506, 509 (Bankr.E.D.Mich.1982).   Factual assertions in

10   pleadings and pretrial orders, unless amended, are considered judicial admissions

11   conclusively binding on the party who made them.    *See White v. Arco/Polymers,*

12   *Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983);  *Fordson,* 25 B.R. at 509.

13       Further, the Court in *Soo Line R. Co. v. St. Louis Southwestern Ry.,* 125 F.3d

14   481, 483 (7th Cir. 1997) concluded:  "although the rule smacks of legalism, judicial

15   efficiency demands that a party not be allowed to controvert what it has already

16   unequivocally told a court by the most formal and considered means possible."

17        Defendant's formal admission that it is entitled to "relief from delay" cannot

18   be overcome by Defendant simply by filing a motion and declaration asserting the

19   opposite position.  Rather, Defendant is held to its judicial admission that it needs

20   relief from delay regarding its legal rights – i.e., Defendant does not need a stay –

21   and is estopped from arguing for a stay of the present litigation.

22       Because Defendant is barred by its judicial admissions from seeking a stay in

23   light of its declaratory relief request for relief from delay, Defendant's request for

24   stay must be denied.

25

26

27

28                          **CONCLUSION**

Case No. 08CV306BTM CAB

1  There is no *per se* rule that patent cases should be stayed pending

2  reexamination.  The perception of such a rule has invited parties such as Defendants

3  to move for stay on the sole grounds that someone else's reexamination request is

4  pending before the USPTO.

5  A complete stay on all aspects of all '184 patent cases is not appropriate as

6  this Court has recently confirmed in its orders on Helen of Troy/OXO and Giant's

7  motions for stay.

8  Plaintiff has now presented the Court will newly analyzed USPTO data that

9  change the entire framework in which the Court enter stays in the three earliest '184

10  patent case stays.  This warrants a new look and new balance of the equities involved

11  in staying this and the other '184 lawsuits.

12  Because the new data shows that a litigation stay pending reexamination

13  completely undermines the entire original purpose of the reexamination process, as

14  well as the Local Patent Rules, and would act to prejudice the Plaintiff in numerous

15  respects, the Court should deny the requested stay.

16  RESPECTFULLY SUBMITTED this Tuesday, April 22, 2008.

17

18  JENS ERIK SORENSEN, as Trustee of
   SORENSEN RESEARCH AND DEVELOPMENT
19  TRUST, Plaintiff

20

21  /s/ J. Michael Kaler

22  J. Michael Kaler, Esq.
   Melody A. Kramer, Esq.
23  Attorneys for Plaintiff

24

25

26

27

28

PROOF OF SERVICE

I, J. Michael Kaler, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action. My business address is the Kaler Law Offices, 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Tuesday, April 22, 2008, I served the following documents:

OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS

DECLARATION OF MELODY A. KRAMER IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| GEORGE L. FOUNTAIN georgefountain@orionlawgroup.net SANG N. DANG sangdang@orionlawgroup.net VY H. VU vyvu@orionlawgroup.net ORION LAW GROUP, PC 3 Hutton Centre Drive, Suite 850 Santa Ana, CA 92707 Telephone: 714-768-6800 Facsimile: 714-768-6850 | Sunbeam Products, Inc. | Email - Pleadings Filed with the Court via ECF |
| KENING LI, PH.D. Kening.LI@pinsentmasons.com PINSENT MASONS LLP 555 11th St., NW, Washington, DC 20004 Telephone: 202-654-4633 Facsimile: 202- 220-2259 | Sunbeam Products, Inc. | Email - Pleadings Filed with the Court via ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully

16.

prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees.  The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

I declare that the foregoing is true and correct, and that this declaration was executed on Tuesday, April 22, 2008, in San Diego, California.

/s/ J. Michael Kaler
J. Michael Kaler

Case No. 08CV306BTM CAB